**UNITED STATES of America,
Plaintiff,**

v.

**Willie FLAGG, Defendant.**

**No. CR–3–98–011(11).**

United States District Court,
S.D. Ohio,
Western Division.

Sept. 12, 2001.

William Hunt, for plaintiff.

Gary Schaengold, Daniel Brinkman, Dayton, OH, for defendant.

DECISION AND ENTRY SETTING FORTH FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING EXPUNGEMENT OF ARREST RECORDS OF DEFENDANT WILLIE FLAGG; MOTION FOR EXPUNGEMENT OF ARREST RECORDS (DOC. # 204) OVERRULED

RICE, Chief Judge.

This matter comes before the Court upon a Motion for Expungement of "arrest records" filed by Defendant Willie Flagg (Doc. # 204).[1] Although the Defendant and his wife, Wendy, were arrested and indicted on federal drug conspiracy charges, the Government later dismissed the charges and failed to name them in a superseding indictment. As a result, the Defendant contends that the Government implicitly has conceded his innocence, thereby warranting the expungement of his "arrest records." The Government disputes this claim, arguing that it declined to re-indict the Defendant and his wife as part of a plea agreement with their daughter, Canetha Flagg, who pled guilty to a drug charge. The Government insists that it still believes the Defendant and his wife are guilty.

On February 2, 2001, the Court held an oral and evidentiary hearing on the Defendant's Motion for Expungement.[2] (Minutes, Doc. # 252). Having reviewed the evidence presented during that proceeding, the Court now sets forth its Findings of Fact and Conclusions of Law.

I. *Findings of Fact*

The Defendant and his wife were arrested and indicted after law enforcement officers executed a search warrant at their home. Both individuals were present at the time of the search, which resulted in the discovery of two gym bags, containing a total of $221,986 in United States currency. Officers found the bags in a crawl space in the attic. Canetha Flagg, the Defendant's daughter, had stored the bags in the crawl space days before the search, at the request of her boyfriend, Anthony Williams, who was involved in drug trafficking activity.

On a Friday shortly before the execution of the search warrant, Canetha Flagg informed the Defendant that she had placed the bags (which she told him contained marijuana) in his attic crawl space. In response, the Defendant instructed his daughter to remove the bags. He repeated this demand the next day, and Canetha Flagg agreed to remove the bags. On Sunday, the Defendant located the two bags in the crawl space, opened one bag and handled the wrapped contents, which had a "hard" feel. Although both bags actually contained only currency, he believed, based on the feel of a wrapped package, that they contained cocaine. Following his discovery of the bags, the Defendant did not mention their presence to his wife. He also did not remove the bags himself or report them to the police. Instead, he called his daughter on the telephone and, once again, demanded that she

---

1. An identical Motion has been filed by Defendant Wendy Ann Flagg (*See* Doc. # 205 in CR-3-98-011(10)). Although Willie and Wendy Flagg have filed identical Motions, the two Defendants are situated somewhat differently. As a result, the Court will address Wendy Flagg's Motion in a separate Decision and Entry.

2. The hearing also encompassed Wendy Flagg's Motion, which, as noted, *supra*, will be addressed in a separate Decision and Entry.

remove the bags from his house. Although Canetha Flagg agreed to do so, she failed to remove the bags prior to the execution of the search warrant, which occurred on February 2, 1998.

When questioned during the execution of the search warrant, the Defendant admitted knowing that the two bags were present in his house. He also admitted that Canetha Flagg had informed him they contained marijuana. Finally, the Defendant admitted that he had opened one bag and had examined the wrapped contents. When she was questioned by police, Wendy Flagg admitted that she had used the crawl space to hide Christmas presents the previous year. She denied knowing that Canetha Flagg had stored the two gym bags there only days earlier.

## II. Conclusions of Law

The view among the federal courts is that records of valid arrests, indictments or convictions ordinarily may not be expunged.[3] *See, e.g., United States v. Robinson,* 79 F.3d 1149, 1996 WL 107129 (6th Cir. March 8, 1996) (unpublished); *United States v. Schnitzer,* 567 F.2d 536, 540 (2nd Cir.1977), *cert. denied,* 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978). If an arrest is made on probable cause, or if an indictment is properly obtained, case law indicates that records of these events should not be expunged, even if the charges are later dismissed.[4] *Schnitzer,* 567 F.2d at 540. In fact, in *United States v. Dunegan,* 251 F.3d 477, 480 (3rd Cir. 2001), the court recently held that a district court lacks subject matter jurisdiction to expunge a criminal record, even when no conviction resulted, absent an applicable expungement statute "or any allegation that the criminal proceedings were invalid or illegal[.]"[5] *See also Sealed Appellant v. Sealed Appellee,* 130 F.3d 695, 697 (5th Cir.1997), *cert. denied,* 523 U.S. 1077, 118 S.Ct. 1523, 140 L.Ed.2d 675 (1998). The rationale for generally refusing to expunge arrest or indictment records is that an arrest or indictment has independent legal significance, insofar as it shows the existence of probable cause to believe that a defendant committed a crime, even when the Government ultimately fails to prove guilt. *Schnitzer,* 567 F.2d at 540. As a result, the Government has an important interest in keeping a record of the arrest or indictment.

An exception to the foregoing general rule exists when the Government dismisses the charges against a defendant

---

**3.** As the Government has recognized, little Sixth Circuit law exists regarding the expungement of records of arrests, indictments and convictions. Although the Sixth Circuit has recognized that the federal courts possess inherent equitable power to expunge a criminal record in an "appropriate" case, it has not yet articulated a standard for determining which cases are "appropriate." *See United States v. Doe,* 556 F.2d 391, 393 (6th Cir. 1977); *United States v. Robinson,* 79 F.3d 1149, 1996 WL 107129 (6th Cir. March 8, 1996) (unpublished). For purposes of its analysis herein, the Court necessarily will rely largely upon case law from other circuits.

**4.** In *Robinson,* the Sixth Circuit noted that existing case law "may not establish a per se

rule" against the expungement of valid criminal records. The court stressed, however, that "compelling and extraordinary circumstances" would be required to justify expungement of such records. Although *Robinson* involved an attempt to expunge a valid conviction, it cited with approval the Second Circuit's ruling in *Schnitzer,* which involved a failed attempt to expunge valid arrest and indictment records.

**5.** In the present case, unlike *Dunegan,* the Defendant does allege that his arrest and indictment were invalid or illegal. As a result, the Court has subject matter jurisdiction to hear his claims, regardless of their merits.

*and* concedes his or her innocence.[6] *See, e.g., United States v. Van Wagner,* 746 F.Supp. 619 (E.D.Va.1990). Records of arrests or indictments also may be expunged when the arrest is constitutionally infirm, when it is based upon a statute that subsequently is declared unconstitutional or when it is made for purposes of harassment or intimidation, or for any other improper reason. *See, e.g., Sealed Appellant,* 130 F.3d at 697 (noting that "courts have used expungement as a remedy for other constitutional or statutorily-created rights that have been violated by a state or other governmental agency"); *United States v. Noonan,* 906 F.2d 952, 957 (3rd Cir.1990); *Geary v. United States,* 901 F.2d 679, 680 (8th Cir.1990); *Schnitzer,* 567 F.2d at 540.

■ In the present case, the Government does not concede the Defendant's innocence. Rather, as noted above, it contends that the Defendant and his wife were not included in a second indictment, pursuant to a plea agreement between the U.S. Attorney's office and their daughter, despite that fact that the Government believes they are guilty. In support of expungement, however, the Defendant suggests that the Government lacked probable cause to arrest and to indict him.

Having reviewed the evidence introduced during the February 2, 2001, oral and evidentiary hearing, the Court finds nothing to suggest that the Defendant was arrested or indicted unlawfully (*i.e.,* that his arrest or indictment was constitutionally infirm, that it was based on a statute that was subsequently declared unconstitutional, or that he was arrested or indicted for purposes of harassment or intimidation, or for any other improper reason).[7] As noted, *supra,* the law enforcement officials who executed the search warrant found $221,986 in United States currency hidden in a crawl space in his attic. Law enforcement officials reasonably believed that the currency represented the proceeds of illegal drug transactions.[8] When questioned, the Defendant admitted knowing that the bags had been hidden in his house. Under these circumstances, the Court agrees with the Government's argument that probable cause existed to arrest, and later to indict, the Defendant.

In light of the foregoing conclusion, the Defendant is not entitled to the expungement of his "arrest records." *See, e.g., Dunegan,* 251 F.3d at 480; *Sealed Appellant,* 130 F.3d at 697; *Schnitzer,* 567 F.2d at 540; *United States v. McFadzean,* 1999 WL 993641 (S.D.N.Y. Nov.2, 1999) (unpublished); *United States v. Seibel,* 1999 WL 681276 (S.D.N.Y. Sept.1, 1999) (unpublished). Accordingly, his Motion for Expungement (Doc. # 204) is overruled.

---

6. The dismissal of an indictment alone does not constitute a concession of innocence. *United States v. Bagley,* 899 F.2d 707, 708 (8th Cir.), *cert. denied,* 498 U.S. 938, 111 S.Ct. 343, 112 L.Ed.2d 307 (1990).

7. In light of this conclusion, the Court need not discuss the "adverse consequences" that the Defendant contends he will suffer if his records are not expunged. For purposes of its analysis herein, the Court simply assumes, arguendo, that the Defendant will suffer such consequences.

8. The facts supporting this belief are set forth, at length, in an Application and Affidavit for Search Warrant submitted to the Magistrate Judge by DEA Special Agent Randall K. Terry prior to the search of the Defendant's residence. (*See* Govt. Exh. 1(b)).